UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK JAMES MILEWSKI,

    Plaintiff,                                         Civil Action No. 16-CV-10026

vs.                                                 HON. BERNARD A. FRIEDMAN

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING FOR FURTHER PROCEEDINGS**

        This matter is presently before the Court on cross motions for summary judgment [docket entries 17 and 20]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

*Background*

        Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying his applications for Social Security disability insurance and Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held a hearing in September 2015 (Tr. 30-60) and issued a decision denying benefits later the same month (Tr. 12-25). This became defendant's final decision in November 2015 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

        Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir.2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir.1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640–41 (6th Cir. 2013).

At the time of his September 2015 hearing, plaintiff was 47 years old (Tr. 33). He has a high school education and work experience as an electrician's assistant, an irrigation technician (sprinkler system installer), and an Army soldier (Tr. 172). Plaintiff claims he has been disabled since September 15, 2012, due to atherosclerosis coronary artery disease (Tr. 171), fatigue (Tr. 33, 39), pain in his knees, hips, and ankles (Tr. 38, 45), and post traumatic stress disorder ("PTSD") (Tr. 40-43). His insured status expired in September 2012 (Tr. 152).

The ALJ found that plaintiff's severe impairments are "coronary artery disease status post three heart attacks, anxiety, and posttraumatic stress disorder" (Tr. 17) and that his other impairments are non-severe (Tr. 17-18). The ALJ found that plaintiff cannot perform his past work, but that he has the residual functional capacity ("RFC") to perform unskilled, sedentary work (Tr.

19). Citing testimony from a vocational expert ("VE") that such work exists in significant numbers, the ALJ concluded that plaintiff is not disabled (Tr. 25).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed for the reasons explained below. Because the ALJ's hypothetical questions incorporated this flawed RFC evaluation, they failed to describe plaintiff accurately in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

***First Error: The ALJ's Failure to Factor Concentration Difficulties into the RFC Evaluation***

The first flaw in the ALJ's assessment of plaintiff's RFC lies in his failure to include his finding – made at Step Three of the disability evaluation process – that plaintiff has "moderate difficulties" with "concentration, persistence or pace" (Tr. 19). As to this issue, the ALJ noted that plaintiff "has been diagnosed with PTSD and his symptoms included difficulty concentrating, disturbing memories, and disturbing dreams with decreased sleep." *Id.*[1] In determining plaintiff's

---

[1] Here the ALJ cited to notes from plaintiff's May 16, 2014, psychiatric examination, Exhibit 4F, page 30 (Tr. 262), which state:

> Chief Complaint:
> Nightmares
> Insomnia
> Depressed mood
> Patient initially evaluated by Drs Hadied/Gaulier earlier this past February and referred for medication evaluation re complaints
>
> Present History:
> Reports long standing problems with nightmares related to war experience, impaired sleep and sadness. He reports that symptoms

RFC, however, the ALJ neglected to make any allowance for plaintiff's compromised ability to concentrate and to work persistently or at pace. Instead, at this step of the evaluation process the ALJ simply concluded that "while the claimant suffers with PTSD symptoms and some anxiety, he can still perform unskilled work" (Tr. 21). Nor did the ALJ include in his hypothetical questions to the VE any particular restrictions concerning concentration, persistence or pace, except to ask the VE at one point whether plaintiff could work assuming the truth of plaintiff's testimony as to these symptoms, to which the VE responded in the negative.[2]

---

> have become worse as the 10th anniversary of a reported IED incident in Iraq in which a peer . . . died. He describes himself reliving "a continuous loop"of the event. He was recently prescribed zolpidem for sleep and reports sleep walking with this medication. He has also been placed on other unspecified medication for brief periods and considered them helpful.
> PCLM was administered to this veteran; score = 63 which is highly suggestive of PTSD.

[2] In fact, the ALJ did not actually ask the VE any proper hypothetical questions. The ALJ began instead by asking the VE whether any sedentary, unskilled jobs "exist in this country and in the state and in what number" (Tr. 52). After the VE testified to the existence of such jobs, the ALJ asked whether plaintiff could perform such jobs if his testimony were credited:

> Q. Okay, if the claimant suffers from the symptoms he's noted here, the sitting, standing, pain in the knees and the hip, suffers from shortness of breath [due] to a heart condition, is limited to weights under 10 pounds, can sit or stand eight hours a day, could he do any of these jobs?
>
> A. Yes, Your Honor. He could do most of these jobs. He could do at least 80 percent.
>
> Q. If we factor in his symptoms he's given here, fatigue, concentration, focus, very limited as to breathing capacity would he be able to do these jobs?
>
> A. Unlikely, Your Honor.

The ALJ's error lies in the fact that he did not question the VE whether plaintiff can perform any of the unskilled, sedentary jobs he identified given the "moderate difficulties" the ALJ found plaintiff has with concentration, persistence or pace. When examined by plaintiff's counsel, the VE indicated that if a worker with concentration problems were "off task" ten percent of the time, outside of regular breaks, this would preclude all work (Tr. 57). The ALJ made no finding as to how often plaintiff would be "off task," other than finding this impairment to be "moderate"[3]; and he did not ask the VE about the vocational significance of this impairment, except to ask him to assume the truth of plaintiff's testimony regarding his trouble with concentration/focus, in response to which the VE stated that no jobs plaintiff could perform exist.

Other courts have noted the error that occurs when an ALJ purports to accommodate a claimant's significantly compromised concentration by finding the claimant can do unskilled work, rather than quantifying the impairment and soliciting VE testimony as to its vocationally limiting effect. For example, in *Brown v. Comm'r of Soc. Sec.*, 672 F. Supp. 2d 794, 797 (E.D. Mich. 2009), the ALJ "found that Plaintiff is moderately impaired as to 'his ability to maintain concentration,

---

(Tr. 54.)

[3] Another judge of this Court has equated "moderate" with 20-30% of the time. *See Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009). Under this definition, it would appear that the VE's testimony in the present case all but compels a finding of disability:

> Q. What is the maximum amount of time a person can be off task with these types of unskilled jobs before it would become work preclusive?
>
> A. I would say 10 percent.

(Tr. 57.)

persistence, or pace,'" and he purported to account for this impairment in a hypothetical question describing plaintiff as being "limited to work that consists of simple, routine, repetitive, one or two step tasks." The Court correctly identified the error and remanded for further proceedings:

> [T]he ALJ's hypothetical question did not accurately describe Plaintiff's psychological impairment with respect to concentration because it does not reflect the frequency of the impairment. In other words, as one judge in this district has reasoned: "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at simple, unskilled routine job." *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D.Mich.2005); *see also Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir.2004) (finding that the ALJ's hypothetical question limiting the plaintiff to "simple one or two step tasks" did not account for the ALJ's finding that the plaintiff "often suffered from deficiencies in concentration, persistence, or pace"); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir.1996). As another judge in this district has expressed, limiting jobs to one or two-step tasks "deals with the level of sophistication or intensity of the work that can be done with the concentration limitation"—on par with "simple, unskilled routine" work—and does not address the frequency of how often the person can concentrate. *See Benton v. Comm'r of Soc. Sec'y*, 511 F.Supp.2d 842, 846 (E.D.Mich.2007).

*Id.*

Similarly, in *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *6 (E.D. Mich. July 28, 2009), the ALJ found that plaintiff had "moderate limitations of concentration, persistence and pace" and sought to account for this impairment by asking the VE to consider a hypothetical individual such as plaintiff "who has the RFC for a range of unskilled light work . . . and limited contact with co-workers and the public." In explaining why this hypothetical was inadequate, the court stated:

> [T]he ALJ must properly account in his hypothetical question to the VE for any and all limitations that he finds. A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms.

6

* * *

*Keyser v. Barnhart*, No. 03–60078 (E.D.Mich., Sept. 2, 2004) (unpublished), held that a hypothetical question of "unskilled jobs with a low stress level alone" is not sufficient to accommodate a claimant who, under the Commissioner's new regulations, has "moderate limitations with respect to concentration, persistence or pace." This Court in *Bielat v. Comm'r of Soc. Sec.*, 267 F.Supp.2d 698 (E.D.Mich., Apr.4, 2003) (quoting *Andrews v. Comm'r of Soc. Sec.*, No. 00–75522 (E.D.Mich., Dec. 18, 2001) and citing *Thomczek v. Chater*, 1996 WL 426247 (E.D.Mich.1996)), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in the ability to concentrate or persist at tasks.

* * *

It is difficult to reasonably accept "moderate" meaning anything less than 20%–30% of the time at work. **Thus, "moderate" concentration problems, even if not severe enough under the regulations to meet the listing of impairments for a finding of disability at Step 3 of the Commissioner's sequential evaluation, need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient.**

* * *

[T]he current hypothetical question relied upon by the ALJ is not adequate on the issue of moderate limitations of concentration, persistence and pace. Nor can this Court determine the number of the parking lot attendant, security monitor, or inspector jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question such as a 20% frequency. Thus, the record is incomplete.

*Id.* at \*\*8-10 (emphasis added). *See also Badour v. Comm'r of Soc. Sec.*, 2011 WL 3320872, at \*7 (E.D. Mich. July 18, 2011), report and recommendation adopted, No. 10-13280-BC, 2011 WL 3300673 (E.D. Mich. Aug. 2, 2011) ("While the ALJ need not use talismatic language or the phrase

7

'moderate deficiencies in concentration, persistence, and pace' in the hypothetical to avoid remand, . . . 'unskilled work,' or 'simple work' are generally insufficient to account for moderate concentrational impairments.").

In the present case, just as in *Brown* and *Green*, the ALJ's hypothetical question is inadequate because it does not account for the "moderate difficulties" with concentration, persistence or pace that the ALJ found plaintiff suffers.[4] On remand, the ALJ must make findings as to the extent of this impairment and include them in proper hypothetical questions to the VE.

***Second Error: The ALJ's Failure to Adequately Explain His Adverse Credibility Determination***

The second flaw in the RFC evaluation lies in the ALJ's failure to explain sufficiently why he discounted plaintiff's testimony, particularly regarding his PTSD symptoms. Plaintiff attributed his PTSD to "[c]ombat experience from being in Iraq, driving field trucks. I was involved in five IEDs, numerous fire fights" (Tr. 40). He said he "was blown up five times" and once "had to cut my partner out of a truck." *Id.* Asked to describe his symptoms, plaintiff stated, "Nightmares, trouble concentrating, not all the time but short term memory loss at time[s], nightmares, trouble sleeping, day mares. . . . Sort of like flashbacks in the middle of the day and hearing loud screams

---

[4] Defendant cites *Mortzfield v. Comm'r of Soc. Sec.*, 2014 WL 1304991 (E.D. Mich. Mar. 31, 2014), and *Roberts v. Comm'r of Soc. Sec.*, 2013 WL 6062018 (E.D. Mich. Nov. 18, 2013), for the proposition that "Plaintiff must explain how the record in this case justified a limitation greater than unskilled work." Def.'s Br. at 8-9. Assuming this is a correct statement of the law, plaintiff in the present case has met this burden by pointing to his own testimony regarding his concentration difficulties and to Dr. Tripi's opinion that plaintiff is "unemployable" due to, among other things, his moderately to markedly impaired ability to sustain concentration and persistence (Tr. 493, 496). This distinguishes the present case from *Mortzfield*, where plaintiff could "point[] to no treating source that found plaintiff to be more limited than as found by the ALJ," 2014 WL 1304991, at *16; and from *Roberts*, where plaintiff "provided no explanation for how he believes the ALJ's RFC finding is inconsistent with Dr. Dickson's opinion" that plaintiff was only "mildly impaired," 2013 WL 6062018, at **6, 17.

8

when no one's around, trouble in crowds, trouble when I'm alone" (Tr. 41). Plaintiff indicated he sleeps three or four hours per night "if I'm lucky." *Id.* Specifically regarding his concentration, the ALJ ask plaintiff if he is "able to focus on a T.V. show," to which plaintiff responded: "No, I'm constantly changing channels, having to get up and walk around and, you know, just look out the window or do something different than watching T.V. I haven't read a book in almost three years" (Tr. 42). Plaintiff said, "I'm lucky if I can make it through a sitcom." *Id.* Asked how his PTSD affects his concentration, plaintiff stated, "Well, I can't concentrate. . . . It's hard for me to focus" (Tr. 43).

As noted, the ALJ at one point in his decision found plaintiff to have "moderate" problems with concentration, persistence or pace, but he later discounted plaintiff's testimony on the grounds that plaintiff was not credible. While "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, . . . [n]evertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In the present case, the ALJ offered essentially four reasons for discounting plaintiff's testimony, none of which is supported by substantial evidence.

First, the ALJ found plaintiff's daily activities as reported on his September 2014 Function Report (Tr. 177-84) to be inconsistent with "the complaints of disabling symptoms and limitations due to PTSD" (Tr. 21). No reasonable fact-finder could find any such inconsistency. Plaintiff reported that his daily routine is to "get up[,] dress[] and watch T.V.[,] shower then sleep" (Tr. 178).[5] As for house and yard work, plaintiff reported that he does "laundry, light cleaning";

---

[5] Asked what he does on an average day, plaintiff testified: "Sit and watch T.V., drink coffee, get up, move around get some blood flowing, sit back down, watch some more T.V., maybe wash a few dishes, sit back down and eat lunch and then take a nap and then do it all over

9

"once a week laundry, have a chore every day with the shelter" (Tr. 179). He reported he "tr[ies] to walk for 20-30 minutes" per day; that when he goes out he walks or uses public transportation; and that if he shops, he does so in stores, by mail, or by computer (Tr. 180). Asked about his hobbies and interests, plaintiff reported "watching TV, go to sports event when I had money to do so, read books, social media (Tr. 181). He reported that his social activities consist of "hang[ing] out with other vets, social media (facebook) . . . every day," but that he does not "go out to socialize hardly ever" (Tr. 181-82). These extremely limited activities, as listed in plaintiff's function report, cannot reasonably be construed as being inconsistent with plaintiff's hearing testimony.

    Second, the ALJ found that plaintiff's "failure to report his earnings to the Internal Revenue Service does not bolster the credibility of his statements in general" (Tr. 21). For support, the ALJ "noted that [plaintiff's] earning record does not reflect full-time work as such (Exhibit 7D)," although plaintiff indicated that he worked from 2006 to 2012 installing sprinkler systems (Tr. 33, 172). Exhibit 7D (Tr. 158-59) is plaintiff's "earnings record," a Social Security document that appears to show income in 1983, 1985-1998, 2000, 2002, 2004-07, 2010, and 2014, but not in 1984, 1999, 2001, 2003, 2008-09, or 2011-13. It is not self-evident from this earnings record that plaintiff "fail[ed] to report his earnings" to the IRS. The ALJ does not explain, and the document itself does not indicate, the source of the earnings information. Nor did the ALJ give plaintiff an opportunity to clarify the alleged discrepancy by asking him about it at the hearing. The data may well come from payroll records, in which case missing earnings information would be the fault of plaintiff's employer(s), not plaintiff. In any event, no reasonable fact-finder could conclude that plaintiff is a tax evader, and therefore an untrustworthy witness, merely because his Social Security earnings

---

again in the afternoon" (Tr. 39-40).

record contains gaps in earnings information.

Third, the ALJ found that plaintiff's acceptance of unemployment benefits "impacts [his] overall credibility" because "[s]uch acceptance shows that the claimant was actively applying for work, claimed to be available for work and held themselves [sic] out another [sic] agency to be able and willing to work during the adjudicative period" (Tr. 21). The ALJ asserts that plaintiff "collected unemployment benefits from 2012 until they ended," citing a social worker's note in October 2013 that plaintiff "has been unemployed since September 2012" and that his "unemployment benefits have ended" (Tr. 280). Again, the ALJ did not question plaintiff about this issue at the hearing. But assuming plaintiff accepted unemployment benefits after his alleged disability onset date, the ALJ's negative inference regarding his credibility is unwarranted. The Michigan Employment Security Act, Mich. Comp. Laws § 421.28(1)(a), requires that an applicant "be available to perform suitable full-time work." The Social Security Act entitles an applicant to disability insurance benefits under an entirely different standard. When, as here, plaintiff is unable to perform his past work, it is the government's burden to prove that other jobs exist in significant numbers which he can perform despite his mental and physical impairments. There is no necessary contradiction between an applicant stating he is willing to do "suitable" work and the applicant nonetheless being entitled to disability benefits if work he is able to perform does not exist in significant numbers. The ALJ's suggestion that plaintiff lacks credibility because he filed the two applications simultaneously is illogical. Willingness to work does not equate with ability to work or with the existence of jobs plaintiff can perform.

Fourth, the ALJ found that "inconsistent information provided by the claimant" regarding his consumption of alcohol "suggest[s] that the information provided by the claimant

generally may not be entirely reliable" (Tr. 21). The alleged inconsistency is that "the claimant denied any heavy drinking recently and VA record[s] cite heavy drinking only through 2011, emergency room records in 2013 cite moderate alcohol use" (Tr. 21). The ALJ's incomplete sentence is not entirely clear, but it appears the ALJ found an inconsistency between plaintiff's denial of heavy drinking and his admitting to moderate drinking. This is perplexing. All one can say is that no reasonable fact-finder could compare these statements and find any inconsistency.

For these reasons, the Court concludes that the ALJ's adverse credibility finding is not supported by substantial evidence. On remand, the ALJ must reassess plaintiff's credibility, particularly as regards his testimony concerning his PTSD symptoms and, as necessary, adjust his RFC evaluation of plaintiff and put revised hypothetical questions to the VE.

***Third Error: The ALJ's Failure to Adequately Explain His Analysis of the Opinion Evidence***

The third flaw in the RFC evaluation lies in the ALJ's failure to offer a reasonable explanation for giving "significant weight" to the opinion of a non-examining psychologist (Rose Moten, Ph.D.) but "not . . . any persuasive weight" to the opinion of an examining psychologist (Elaine Tripi, Ph.D.). As the ALJ acknowledged, "[g]enerally, the opinions of non-examining medical sources are entitled to less weight than the opinions of treating and examining sources" (Tr. 23), and his explanation for deviating from this rule in this case is unconvincing and self-contradictory.

Dr. Moten reviewed plaintiff's application and medical records (minus Dr. Tripi's report) on behalf of the Disability Determination Service in January 2015 (Tr. 71, 81). She concluded that "[t]he evidence in file does not support a severe psych impairment. Clmt does not allege a psych impairment" (Tr. 71, 81), and that plaintiff had only "mild" restrictions in activities

12

of daily living, difficulties maintaining social functioning, and difficulties maintaining concentration, persistence or pace due to anxiety (Tr. 70, 80-81). The ALJ stated:

> In this case, Dr. Moten's opinion is given significant weight because it is consistent with the claimant's own reports and his VA records. Further, Dr. Moten had an awareness of other evidence in the record and an understanding of social security disability programs and requirements.

(Tr. 23.)

The ALJ's decision to give Dr. Moten's opinion "significant weight" is incomprehensible. Contrary to Dr. Moten's conclusion, the record does support a severe psychological impairment (anxiety and PTSD), as the ALJ himself found (Tr. 17, finding 3). Contrary to Dr. Moten's assertion, plaintiff clearly does "allege a psych impairment," as demonstrated by his medical records and his hearing testimony, as the ALJ acknowledged at length in his decision. Further, the ALJ disagreed with Dr. Moten's conclusion that plaintiff's concentration is only mildly impaired, as the ALJ himself found this impairment to be moderate (Tr. 19, lines 5-6). Given that the ALJ actually rejected the salient aspects of Dr. Moten's evaluation of plaintiff's mental impairments, the ALJ's statement that he gave Dr. Moten's opinion "significant weight" is nothing less than nonsensical.

The ALJ's explanation for giving Dr. Tripi's report no "persuasive weight" is only slightly less so. Dr. Tripi examined plaintiff, presumably at his attorney's request, in July 2015 (Tr. 491). Dr. Tripi is both a psychologist and a Ph.D. rehabilitation counselor, and she worked for five years as a "Consulting Psychologist to the Veteran's Administration specializing in Post Traumatic Stress Disorder" (Tr. 499). Her report states in relevant part as follows:

> The following symptoms cause severe social, personal and occupational impairment:

13

> - generalized anxiety with occasional panic attacks
> - flashbacks/intrusive thoughts
> - insomnia and other sleep disturbance
> - overwhelming feelings of sorrow with survivor's guilt
> - severe depression
>
> \* \* \*
>
> SUMMARY AND CONCLUSION:
> Patrick Milewski is a 48-year-old Army Iraq War veteran who presents with classic symptomatology related to service-connected post-traumatic stress disorder. . . . Based on my clinical interview, observations and review of assessment measures, it is my professional opinion that Mr. Milewski meets all criteria as outlined by DMS-IV and DMS-V in regard to 309.81.[6] Based on his age, education, past work experience and current level of symptoms, it is my professional opinion not only as a licensed psychologist, but as a nationally certified rehabilitation counselor that Mr. Milewski is not a viable rehabilitation candidate, nor is he capable of sustaining substantial, gainful work activity. He is unemployable.

(Tr. 492-93.) Dr. Tripi also found plaintiff to be moderately to markedly impaired in various areas relating to understanding and memory, concentration and persistence, social interaction, and adaptation (Tr. 496-98).

The ALJ offered four unpersuasive reasons for giving Dr. Tripi's opinions no weight. First, he questioned plaintiff's and Dr. Tripi's motives, noting that Dr. Tripi "was presumably paid for the report" and that she examined plaintiff only once, and not for treatment but because plaintiff sought "to generate evidence for the current appeal" (Tr. 23). It would be an unusual doctor indeed who did not charge for services; and only an incompetent attorney would neglect to arrange for a doctor's examination when, as in the present case, the record contains little or no opinion evidence concerning the vocational significance of the client's medical impairments. The fact that Dr. Tripi

---

[6] 309.81 is the DSM code for PTSD. *See* http://www.mental-health-today.com/ptsd/dsm (visited August 31, 2016).

examined plaintiff only once is a factor the ALJ may consider in weighing her opinions. *See* 20 C.F.R. § 404.1527(c)(2). However, this factor does not justify rejecting Dr. Tripi's opinions, as the only other opinion evidence regarding the severity of plaintiff's PTSD is from Dr. Moten, who did not examine plaintiff at all, a fact the ALJ neglected to mention.

Second, the ALJ stated that "[i]t also bears repeating that the claimant did not even list PTSD in his report at the time of his application" (Tr. 23). This is incorrect, as plaintiff did mention PTSD in his function report (Tr. 178). More importantly, the ALJ does not explain why Dr. Tripi's opinions, based on her examination of plaintiff in July 2015, may be rejected based on what plaintiff may have omitted from his applications nearly one year earlier in September and October 2014.

Third, the ALJ appears to question Dr. Tripi's diagnosis of PTSD because "a [VA] mental health provider . . . examined the claimant one month earlier and cited only generalized anxiety with a need to rule out PTSD, rather than the definitive diagnosis Dr. Tripi cited" (Tr. 23). This is an odd criticism for the ALJ to make, given that the ALJ himself found that PTSD is among plaintiff's severe impairments. Moreover, the "mental health provider" mentioned by the ALJ is a social worker (LMSW) (Tr. 384), who under defendant's regulations is not permitted to make medical diagnoses or give medical opinions. *See* SSR 06-03p. Therefore, the ALJ erred to the extent he rejected Dr. Tripi's opinions on the grounds they are unsupported by a social worker's diagnosis.

Finally, the ALJ rejected Dr. Tripi's opinions on the grounds that while Dr. Tripi reported "that the claimant is isolated and withdrawn," plaintiff's "daily activities include shopping as well as using Facebook everyday [and he] also reported that his interest [sic] included attending sporting events" (Tr. 23). Substantial evidence does not support the ALJ's characterization of

15

plaintiff's reported daily activities. As noted above, plaintiff did not report that he shops, but only that *if* he shops he can do so in stores, by mail, or by computer (Tr. 180). As for sports, plaintiff reported only that he would "go to sport event when I had money to do so," not that he does so currently (Tr. 181). The only social activities plaintiff mentioned was "hang[ing] out with other vets. Social media (facebook)" (Tr. 181), and he added, "don't go out to socialize hardly ever" (Tr. 182). No reasonable fact-finder could find any contradiction between plaintiff's reported activities and Dr. Tripi's finding that plaintiff is isolated and withdrawn.

On remand, the ALJ must reevaluate the medical evidence to correct the errors noted above and, as necessary, revise his RFC assessment of plaintiff and his hypothetical questions to the VE.

*Fourth Error: The ALJ's Failure to Evaluate Medication Side Effects*

The fourth flaw in the RFC evaluation lies in the ALJ's failure to properly evaluate plaintiff's medication side effects. Plaintiff testified that one of his medications, Zoloft, "makes me groggy and sort of foggy" (Tr. 22). He reported a similar side effect from this medication when he was seen at the VA Medical Center in May 2014 (Tr. 260). While the ALJ acknowledged plaintiff's testimony and this treatment note, he did not make any findings as to this side effect or include any such findings in his hypothetical questions to the VE. This was error because the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must

16

(1) determine which medications plaintiff was taking during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects, if any, and adjust his findings as appropriate regarding plaintiff's RFC, and (3) incorporate these findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person such as plaintiff experiencing such side effects.

*Conclusion*

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings to address the errors identified above. This is a sentence four remand under § 405(g).


Dated: September 2, 2016
      Detroit, Michigan

S/ Bernard A. Friedman\_\_\_\_\_
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE